NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

## ELIZABETH WICKHAM, PETITIONER, v. MONMOUTH MEMORIAL HOSPITAL, DEFENDANT.

Decided April 18, 1932.

For the petitioner, *T. Gerard Wharton.*

For the respondent, *William B. McMichael.*

\* \* \* \* \* \* \*

Petitioner is the widow of Nathaniel St. Clair Wickham, who was a British subject, about thirty-five years of age. Wickham was employed by the respondent sometime during the month of April or May, 1930, as assistant chef, the agreed rate of compensation therefor being $75 a month and full maintenance. Late in the afternoon of July 15th, 1930, Wickham, in the course of pulling a soup pot across the floor of the hospital kitchen from the range to the ice box, slipped, fell and injured his knee. He continued work despite the injury, although he was seen to limp several days thereafter and complained of pain. A few days later, at the instance of a fellow employe, he visited the respondent's clinic for treatment. He was thereafter confined to a bed in one of the respondent's wards and treated by Dr. Daniel F. Featherston, assistant surgeon of the respondent hospital. The injured knee continued to swell and pain and Dr. Featherston

subsequently operated for cellulitis. The operation was unsuccessful and Wickham died on August 12th, 1930. Petitioner, also a British subject residing in Liverpool, England, brings this action on behalf of herself and infant children to recover compensation for the death of her husband.

The attorney for the respondent moved for a dismissal of the petition at the opening of the hearing on two grounds: first, that the petition should have been filed by the decedent's administrator or by the British consul, or by both, and second, that the petitioner and her infant children, being alien dependents, were not entitled to compensation under the act aforesaid. While it is true that the petition was signed and filed by the widow, this procedure is proper in view of the recent decision of the Court of Errors and Appeals in the case of *Mountain Ice Co.* v. *Durkin* (1929), 105 *N. J. L.* 636; 147 *Atl. Rep.* 451. There is nothing in the act making it compulsory for the dependents of a deceased employe to make application for compensation through the decedent's administrator, nor is there anything making it mandatory for alien dependents to make application through the representative of his or her government. The Compensation act is a remedial statute and is to be liberally construed. The statute was enacted for the purpose of protecting injured workmen or their dependents and it was not the intention of the legislature to burden those protected by the act with complicated legal proceedings in order to obtain compensation. Neither is it the intent of our treaties with foreign governments to compel foreign subjects to follow any certain procedure to obtain compensation, which, if they do not follow, will bar them from their rights. To have passed favorably upon this motion of the respondent would have permitted the statute of limitations to apply in connection with any other petition which might be filed by an administrator or foreign representative, thus denying to the petitioner and her infant children relief under the statute.

As to the respondent's contention that section 12 of the original Workmen's Compensation act excluded alien dependents who were not residents of the United States and that

it was an error on the part of the legislature when it omitted the word "alien" from a subsequent amendment (*Pamph. L.* 1921, *ch.* 85), it is a foregone conclusion that when this amendment became effective it was the intent of the legislature to extend the benefits of the act to alien as well as domestic dependents. Furthermore, the amendment of 1921 expressly repealed all acts or parts of acts inconsistent therewith and by the well settled law of this state the earlier provision of the act excluding alien dependents was thereby repealed when it was omitted therefrom.

The questions involved in the case at bar were, first, did the decedent meet with an accident arising out of and in the course of his employment; secondly, if he met with such an accident, did the injury alleged result from this accident and subsequently cause his death, and third, is the petitioner entitled to compensation as a partial or full dependent?

As to the accident, we have the uncontradicted testimony of one Charles Taylor, a disinterested fellow employe, who gave a very accurate description thereof. While it is true that he did not describe fully what part of the body struck the floor when decedent fell, still there is no question in the mind of the court that he was present when the same occurred and that he saw it happen. I feel that judicial notice can be taken of the fact that when a person witnesses another person fall, he does not watch every movement that is made and every part of the body which comes in contact with the surface upon which he falls. An accident is an unexpected or untoward event and unexpected in so far as witnesses are concerned. We have the further testimony of one William Mumby, another disinterested fellow employe, who, while he did not witness the accident, saw the petitioner limping the next day and suggested that he go to the clinic. We also have a letter from the respondent signed by a Mrs. M. M. Scott, superintendent, addressed to the petitioner, marked in evidence as *Exhibit "P-14,"* which states in part: "We deeply regret the accident which caused his death." This would imply knowledge as well as notice of the accident.

Some question was raised by the respondent as to the ad-

missibility of a letter from the decedent to the petitioner marked in evidence as *Exhibit "P-12."* I admitted this letter in evidence under the *res gestæ* doctrine. In this letter which the decedent wrote to petitioner he stated in part: "I have had a rotten week. I got a fall in the kitchen and hurt my leg. It has pained me all week." The test of whether or not a written declaration is admissible as part of the *res gestæ* is determined by ascertaining whether the declaration was made when there was no motive to utter the same for decedent's own interest at a period not remote enough to allow time for premeditation. No definite time from the main occurrence can be fixed as a rule to determine what utterances shall be admitted as part of the *res gestæ;* each case must depend upon its own circumstances. See *Johnston* v. *Payne-Yost Construction Co. et al.* (*Pa.*, 1928), 141 *Atl. Rep.* 481. A letter, though not actually signed, was admitted as part of the *res gestæ* in the case of *Freeman* v. *Bartlett* (1885), 47 *N. J. L.* 33. See, also, *Duysters* v. *Crawford* (1903), 69 *Id.* 614; 55 *Atl. Rep.* 823.

From all of the uncontradicted testimony aforesaid I find that the petitioner has conclusively proved that the decedent met with an accident arising out of and in the course of employment. Even if I had excluded *Exhibit "P-12"* as not being part of the *res gestæ*, I would arrive at the same conclusion.

The next question to be determined is whether or not the decedent sustained an injury resulting from this accident and whether, as a result of the same, he died. The testimony is undisputed that, prior to the date of the accident, the decedent was a normal person, sound in body and free from all serious illness or disease. There is no question that he met with an injury to his knee. As brought out in the testimony of petitioner's witnesses, he suffered a hard fall on the floor of the hospital kitchen and limped considerably as a result thereof. Shortly thereafter he went to the hospital clinic for treatment and was later confined to a bed in the hospital ward due to his condition. Dr. Featherston, assistant surgeon in respondent hospital, a doctor of high repute and

standing in his community, the attending physician in this case and a disinterested witness, testified as to his findings and treatment. He testified without hesitation that an incorrect diagnosis of a sprained knee had first been made, due to the difficulty of accurately diagnosing external manifestations on the body of a dark-skinned person. The testimony disclosed that the decedent was a negro native of British Guiana, with a skin of very dark color. The fact that there was no break in the skin anywhere in the knee area was a further contributing factor to the initial incorrect diagnosis, and prevented the doctor from discovering the true nature of the injury until sometime later. The decedent's knee was considerably swollen and quite painful and these manifestations continued to increase. Subsequently, Dr. Featherston performed an operation for cellulitis of the injured area, but the operation was unsuccessful, due to the fact that septicemia had developed from the broken down haematoma, thereby causing the patient's death. Dr. Featherston, in his testimony, gave a very clear and concise history of his findings and of the subsequent conditions which caused septicemia.

It was respondent's contention that a septicemic condition could not exist without a break in the skin, but respondent's own expert agreed with the petitioner's physician that such could be the case. A research of medical books reflects that haematoma may break down and form different local abscess formations or cause general blood stream infection without any apparent external wound, as in this case. Every credence must be given to the testimony of the physician who, acting as the attending physician, was familiar with every phase of the case and every development therein. The only medical testimony offered by the respondent to offset that offered by the petitioner was the expert testimony of Dr. Kessler, whose answers were based entirely upon hypothetical questions.

Under the circumstances, I find that decedent died as a result of an injury received due to an accident arising out of and in the course of employment.

The final question for determination is whether or not petitioner is entitled to compensation as a partial or full dependent.

From the testimony submitted on behalf of the petitioner it would appear that the decedent was that type of individual necessary in our industrial and commercial life, whose activities of employment were such as to cause him to spend a considerable amount of time away from home. His occupation, prior to his coming to the United States, was that of a ship clerk at a wage of twelve shillings per month, which was approximately equal to the salary he received at the time of his death, which amounted to $75 per month, together with his room and board. With this salary he supported his wife and family. The evidence is undisputed that he sent home to his family twice a month approximately $15, sometimes adding $1 or more for his children. Taking into consideration the rate of exchange and the living conditions of those involved, it was sufficient for the support of his wife and family. They were fully dependent upon him for this support. There is no evidence that his wife received any income from any other source. Experience has taught us the mode of living of these people and their habits. Under the circumstances I am making an award on the basis of full dependency. It is my opinion that this conclusion is amply supported by earlier decisions of our courts. In the case of *Schmid* v. *Stanton Forging Co.* (1928), 104 *N. J. L.* 471; 142 *Atl. Rep.* 4, the Supreme Court held that a widow may be deemed totally dependent within the meaning of the statute even though she has other means of support than the money received from her husband and the mere fact that she does not receive all of her support from her husband does not necessarily mean that she is debarred from compensation under the act as a total dependent. The case at bar is even stronger than the *Schmid* case because the petitioner and her children relied solely upon the decedent for their support and had no other means of support. The case of *Bodnarik* v. *Empire Floor and Tile Co.* (1931), 108 *N. J. L.* 75; 156 *Atl. Rep.* 450, decided by the Court of Errors and

Appeals subsequent to the *Schmid* case is not in conflict. In that case it appeared that the decedent and his wife were natives of Czecho-Slovakia; that deceased left his home there some years before his death and came to this country and obtained employment in the factory of the defendant; that his wife remained in her native land and continued to live there until the death of her husband, partly supporting herself by her own labor and receiving from him as a contribution to her support the sum of $1.50 per week. Under such circumstances the court held that the wife was not wholly dependent upon her husband and was, therefore, not entitled to full compensation unless at the time of her husband's death she was actually a part of his household. In the present case, while the petitioner was not actually a member of the decedent's household at the time of his death, she was wholly dependent upon him for support.

As stated above the decedent received a salary of $75 a month, or $900 a year, together with his room and board. The allowance for room and board under the Compensation act is $5 per week or $260 per year. The salary, therefore, of decedent at the time of his death was at the rate of $22.31 per week. At the time of his death there were four dependents.

In view of my determination of the facts in this case, I find that the petitioner is entitled to compensation as follows: $11.16 a week from August 12th, 1930, to November 17th, 1930; $10.04 a week from November 17th, 1930, for the balance of three hundred weeks from the date of decedent's death; $10 a week until William Atherley Wickham becomes sixteen years of age, and $10 a week until Irene Elizabeth Wickham becomes sixteen years of age; the last two mentioned rates being based upon the minimum rate allowed by the statute.

 * * * * * * *

JOHN C. WEGNER,
Referee.